**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESTATE of LaTEEF J. DOTSON**, through **DIANE C. DOUGLAS** (estate administrator and individually),<br><br>Plaintiff,<br><br>v.<br><br>**VIEWPOINT LEASING INC.**, *et al.*,<br><br>Defendants. | Civil Action No. 24-255 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss or Strike filed by Defendants Gary Gray and Viewpoint Leasing Inc. (collectively, "Defendants").[1] ("Motion," ECF No. 24.) Defendants submitted a Brief in support of their Motion. ("Moving Br.," ECF No. 39-1.) Plaintiff Diane Douglas, representing the estate of LaTeef J. Dotson, filed a Brief in Opposition ("Opp'n Br.," ECF No. 27), to which Defendants submitted a Reply ("Reply Br.," ECF No. 33.)

---

[1] Gray's Truck Repair, LLC ("Gray's Truck Repair" or "the LLC") is named as a Defendant in the Amended Complaint and is listed on the docket as a Defendant. However, Gray's Truck Repair is not represented by counsel and is not an entity capable of suing or being sued because the LLC is no longer in existence. (*See* ECF No. 24-6). Gray's Truck Repair's existence was officially terminated on March 27, 2013. (*Id.*) As such, Gray's Truck Repair will not be discussed in this Opinion and all claims against them will be dismissed with prejudice. *See Int'l Union of Operating Engineers, Loc. 68, AFL-CIO v. RAC Atl. City Holdings, LLC*, Civ. No. 11-3932, 2013 WL 353211, at *9 (D.N.J. Jan. 29, 2013) ("[O]nce a limited liability company's certificate of formation is canceled, it no longer exists as a separate legal entity for any purpose."); *Phillips v. TDI Lakota Holdings LLC*, Civ. No. 10-782, 2011 WL 13225282, at *4 (E.D. Pa. Apr. 29, 2011) (same); *Adelsberger v. United States*, 58 Fed. Cl. 616, 618 (Fed. Cl. 2003) (providing that "a party must have a legal existence as a prerequisite to having the capacity to sue or be sued").

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2] For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion to Dismiss and **DENY** Defendants' Motion to Strike.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    BACKGROUND[3]

This diversity action arises from the death of Decedent Lateef Dotson ("Dotson") in May 2022. ("Am. Compl.," ECF No. 19.) Dotson was a citizen of Delaware and Plaintiff Diane C. Douglas ("Plaintiff" or "Douglas") is Dotson's mother who is also a citizen of Delaware. (*Id.* ¶¶ 3, 4.) Defendant Viewpoint Leasing, Inc. ("Defendant" or "Viewpoint") is a citizen of New Jersey, incorporated in New Jersey. (*Id.* ¶ 5.) Defendant Gary Gray ("Defendant" or "Gray") is the owner of Viewpoint as well as non-party Gary W. Gray Trucking, Inc. ("GWG Trucking"). (*Id.* ¶¶ 3, 4, 7, 26, 27, 28.)

According to the Amended Complaint, GWG Trucking rented or leased trucks from Viewpoint. (*Id.* ¶¶ 30, 38). On May 2, 2022, Brandon R. Loyle ("Loyle" or "the Driver"), a commercial driver and employee of GWG Trucking was operating a Sterling dump truck, which GWG Trucking leased from Viewpoint. (*Id.* ¶¶ 25, 38, 48.)[4]  As part of the lease agreement that

---

[2] All references to Rules hereinafter refer to the Federal Rules of Civil Procedure unless otherwise noted.

[3] For the purposes of considering this Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[4] Decedent's brother, Rashar Dixon, and Plaintiff later filed a separate suit against GWG Trucking and Loyle in Pennsylvania federal court but that action has since been transferred to this Court. *See Estate of Dotson v. Gary W. Gray Trucking, Inc.*, Civ. No. 24-3996. That suit is currently pending and has been assigned to the undersigned. For the reasons set forth below, the Court will dismiss the claims against Gray without prejudice. The Court will also grant Plaintiff leave to amend her complaint. The Court recommends that in any subsequent second amended complaint, Plaintiff consider consolidating her claims from her co-pending actions into a single complaint. Otherwise, the Court will consider consolidating the matters *sua sponte*. At a minimum, as explained via text orders in both cases, should this matter proceed to discovery, the Court will attempt to coordinate discovery. (*See* ECF No. 35 in *Estate of Dotson v. Gary W. Gray Trucking, Inc.*, Civ. No. 24-255 & ECF No. 55 in *Estate of Dotson v. Gary W. Gray Trucking, Inc.*, Civ. No. 24-3996.)

2

was signed by agents of Viewpoint and GWG Trucking, "[t]he leased equipment will be under the exclusive management, direction and control of the permitee while being used to conduct activities for the permitee," and "[a]ll maintenance costs shall be the responsibility of the Lessee. The Lessor shall be given access to the vehicle upon responsible request. Lessee shall pay for and be responsible for all fuels and oils required to properly operate and maintain the equipment." (Ex. A, ECF No. 19-1; Ex. B, ECF No. 24-5.)

Around 10:00 a.m. on May 2, 2022, Loyle failed to maintain control of the dump truck, crossed the double-yellow line of a two-way street, and hit Dotson head-on, killing him. (Am. Compl. ¶¶ 39–41.) Dotson was survived by his mother Plaintiff Douglas, brother Rashar Dixon, and two minor sons. (*Id.* ¶ 50.) As alleged, one of Plaintiff's experts determined that the cause of the accident was poor maintenance and defective mechanics of the dump truck. (*Id.* ¶ 43.) As a result, Plaintiff alleges that "Defendant Mr. Gray knew or should have known about the dump truck's defects" since Gray and Viewpoint were responsible for the vehicles. (*Id.* ¶ 44.) Plaintiff further contends that Defendants are responsible for Dotson's death because Viewpoint, through Gray's permission, leased the Sterling dump truck to GWG Trucking and negligently allowed Loyle to operate the truck. (*Id.* ¶ 55.) Plaintiff argues that Defendants violated 49 C.F.R. § 396.3(a) since the vehicle was not properly inspected, repaired, or maintained, further proving Defendants' negligence. (*Id.* ¶ 75.)

Plaintiff alleges four counts in her Complaint: (1) a survival action by the estate against Gray and Viewpoint under Delaware law; (2) a wrongful death action by Plaintiff against Gray

and Viewpoint under Delaware law; (3) negligence against Gray and Viewpoint; and (4) gross negligence against Gray and Viewpoint. (*See* Am. Compl.)[5]

## B.   PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on January 16, 2024. (ECF No. 1.) Thereafter, on March 29, 2024, Plaintiff submitted an Amended Complaint. (ECF No. 19.) Defendants then filed the instant Motion to Dismiss or Strike (ECF No. 24.)

## II.   **LEGAL STANDARD**

### A.   MOTION TO DISMISS

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely

---

[5] Plaintiff sues Defendants as representative of the estate and in her individual capacity. (*See* Am. Compl. ¶ 4, 8.) However, Plaintiff has not alleged a basis for Article III standing to the extent she seeks damages in her individual capacity for Defendants' negligence and gross negligence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (noting that to have standing, a plaintiff must show (1) that he or she suffered an injury in fact that is concrete, non-hypothetical, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief); *see also FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (explaining that the plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements as to each claim).

state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.   MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides, inter alia, that the court may strike from a pleading an insufficient defense or immaterial, impertinent, or scandalous matter. "The purpose of a motion to strike is to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case." *Ly Berditchev Corp. v. Truss Cosmetics Corp.*, Civ. No. 22-4242, 2023 WL 6307462, at *2 (D.N.J. Sep. 28, 2023) (quoting *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000)). "Motions to strike are decided on the pleadings alone." *Deery v. Crystal Instr. Corp.*, Civ. No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (citations omitted). Importantly, motions to strike are generally disfavored and granted sparingly, such as when a defense is clearly insufficient regardless of any disputed issues of fact. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217–18 (D.N.J. 1993). "Even where the facts are not in dispute, Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law." *Id.* at 218 (citing, *inter alia, Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989)). The Court exercises wide discretion in considering a Rule 12(f) motion to strike. *Id.* at 217.

5

## III. DISCUSSION

Defendants make several arguments in support of their Motion to Dismiss and one argument in support of their Motion to Strike. (*See* Moving Br.) Defendants argue that (1) the Federal Motor Carrier Safety Administration ("FMCSA") regulations do not grant Plaintiff a private right of action, (*id.* at 8); (2) the Graves Amendment preempts Plaintiff's claims that Defendants are liable for the conduct of its lessee, (*id.* at 12); (3) the claims against Gray should be dismissed because Plaintiff lacks standing to allege that Gray breached his duty of loyalty to his own company and because he is protected by a liability shield, (*id.* at 14); and (4) Plaintiff's Amended Complaint insufficiently pleads gross negligence, (*id.* at 20). In the alternative, Defendants argue that the Court should strike the "impertinent, prejudicial allegations about Brandon Loyle's seatbelt use" from the Amended Complaint. (*Id.* at 1-2.) Lastly, Defendants contend, without opposition, that New Jersey law applies to whether Plaintiff states a claim for relief. (Moving Br. at 6). The Court will address each argument starting with the contention that New Jersey law applies and then proceed with the arguments made in support of Defendants' Motion to Dismiss and Motion to Strike.

### A. CONFLICT OF LAW ANALYSIS

Defendants argue that "New Jersey law should govern the substantive tort claims against Defendants" because there is no conflict with Delaware law and the accident took place in New Jersey. (Moving Br. at 7-8.) Plaintiff did not address this issue in her pleadings other than to say that the wrongful death and survival actions were brought under Delaware law. Moreover, Plaintiff does not challenge Defendants' contentions that New Jersey law applies to the substantive tort claims. Nonetheless, the Court will briefly address the conflict of law issue.

This Court, as a federal court sitting in diversity, is required to apply the conflict-of-laws rules of the state in which it sits—i.e., New Jersey. *See Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 496 (1941). New Jersey applies the more flexible government-interest approach to choice-of-law questions. *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007). This analysis seeks "to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation." *Erny v. Estate of Merola*, 792 A.2d 1208, 1212–13 (N.J. 2002). There is a presumption that the law of the state where the incident took place applies. *Orme-Ellis v. Est. of Gardner Harrison Stubee*, Civ. No. 10-0543, 2010 WL 4852434, at *2 (D.N.J. Nov. 22, 2010). New Jersey law therefore governs this substantive tort action given that is where the accident occurred. Nevertheless, Delaware and New Jersey have the same elements of negligence and both states have wrongful death and survival action statutes. *See Davis v. Brickman Landscaping, Ltd.*, 98 A.3d 1173, 1178–79 (N.J. 2014); *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001). In sum, although the Complaint states a wrongful death and survival action under Delaware law, the underlying negligence and gross negligence claims are governed by New Jersey law. In any event, distinguishing between which states' law applies does not impact the Court's analysis of the Motions.

### B.   MOTION TO DISMISS

#### 1.   Whether Plaintiff's Complaint Should Be Dismissed Because the FMCSA Regulations Do Not Provide a Private Right of Action

With respect to their Motion to Dismiss, Defendants first argue that the FMCSA regulations do not grant Plaintiff a private right of action, thus Plaintiff cannot sue for any failure to comply with the regulations. (Moving Br. at 8–9, 11 (citing *Albuquerque v. Achane*, Civ. No. 19-13901, 2019 WL 3780101, at *3 (D.N.J. Aug. 12, 2019))). Relatedly, Defendants argue that the Amended Complaint should be dismissed because the lease attached to the Amended

7

Complaint requires GWG Trucking, not Viewpoint or Gray, to maintain and service the vehicles. (Moving Br. at 11–12.)

Upon review of the Amended Complaint and Defendants' Motion to Dismiss, the Court cannot ascertain the basis for Defendants' argument. It appears from the face of the Amended Complaint that Plaintiff's causes of action are not based on any violation of the FMCSA regulations. Rather, the causes of action against Defendants are state law negligence and gross negligence claims. The Court construes Plaintiff's citations to the regulations and allegations that Defendants violated the regulations as evidence to show or to help explain why Defendants allegedly breached their duty of care, an element of negligence. *Cf. Lee v. Golf Transportation, Inc.*, Civ. No. 21-1948, 2023 WL 7329523, at *13 (M.D. Pa. Nov. 7, 2023) (granting summary judgment on preemption grounds but having no issues with the plaintiff's complaint that stated the defendant had "a duty to ensure that it had appropriate policies in place to ensure that its drivers did not violate FMCSA regulations"). Moreover, relying on the FMCSA is like relying on any statute or regulation to show that a defendant breached their duty of care. *See Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986) ("The failure to follow a federal regulation may be negligence *per se* 'if, under state law criteria, it may be considered the kind of . . . regulation violation of which is negligence *per se*.'" (quoting *Schindler v. United States*, 661 F.2d 552, 560–61 (6th Cir. 1981))). Nevertheless, the Court concludes that the Amended Complaint permissibly asserts violations of the FMCSA. The fact that those regulations do not provide a cause of action is not grounds for dismissal, especially given that Plaintiff's causes of action are for negligence and gross negligence.

Related to the FMCSA, Defendants argue that the FMCSA leasing regulations do not apply to Viewpoint because it is not a motor carrier registered with the Secretary of Transportation to

8

transport property. (Moving Br. at 9.) Again, the Court finds that Plaintiffs are not arguing that Defendants violated the regulations and are liable as a result; instead, they are arguing that Gray and Viewpoint had personal knowledge of the regulations and breached their duty of care by not complying with them.[6] Whether Viewpoint is required to comply with the FMCSA regulations is not a question for the Court to examine at this stage of the proceedings; it is the type of factual question to be determined following discovery. Accordingly, Defendants' argument that the Amended Complaint should be dismissed because Plaintiff seeks to sue under the FMCSA is without merit.

        2.    Whether The Graves Amendment Preempts Plaintiff's Claims Against Defendants

Defendants next argue that the Court should grant their Motion to Dismiss because the Graves Amendment preempts Plaintiff's claims against Viewpoint and that Viewpoint cannot be liable for GWG Trucking's actions. (Reply Br. at 2.) According to Defendants, "Plaintiff seeks to hold Viewpoint liable for leasing its vehicles to GWG Trucking . . . the very type of claim that the Graves Amendment eliminated." (*Id.* at 3.)

The "Graves Amendment," 49 U.S.C. § 30106, precludes accident victims injured by an individual driving a leased vehicle from seeking to hold the lessor company vicariously liable. The Graves Amendment applies only to actions commenced on or after August 10, 2005, as is the case here. 49 U.S.C. § 30106(c). The Graves Amendment may preempt a state law vicarious liability claim against an owner or lessor of a motor vehicle for the torts of its lessee if liability is not premised on the owner/lessors' fault or negligence. *See Schalalbeo v. Damco Distribution Servs., Inc.*, 657 F. Supp. 3d 687, 692 (E.D. Pa. 2023).

---

[6] Defendants' argument is circular because it does not matter if Viewpoint is a motor carrier that has to comply with the FMCSA regulations if, as Defendants argue earlier, the FMCSA does not give Plaintiff a private right of action.

9

The Graves Amendment provides that:

> [a]n owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if
>
> > (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). Notably, the Graves Amendment did not "absolv[e] [rental car] companies of liability if they are at fault." *Schalalbeo*, 657 F. Supp. 3d at 693 (quoting 151 Cong. Rec. H1034-01, 2005 WL 556038 (Mar. 9, 2005)) (alterations in original). The amendment instead "eliminat[ed] vicarious liability simply because [rental car companies] own the vehicle." *Id.*

Given that the language in the Graves Amendment is clear, the Court concludes that the Grave Amendment does not preempt Plaintiff's negligence and gross negligence claims against Defendants. Plaintiff expressly alleges in her Amended Complaint that the truck that killed Dotson "lacked proper maintenance." (Am. Compl. ¶ 32 ("The heavyweight truck lacked proper maintenance, which Viewpoint, the LLC, Gray, and GWG knew or should have known about through his ownership . . . and managerial roles . . . and his hands-on involvement with the defendant entities.")). Moreover, Plaintiff alleges that Defendants "knew that servicing the Sterling dump truck was being intentionally or negligently ignored, (*id.* ¶ 75), and that Defendants "knew or should have known that responsible persons and/or entities intentionally or negligently disregarded mandatory obligations to ensure that '[p]arts and accessories shall be [always in safe

and proper operating condition].'" (*Id.* ¶ 76 (quoting 49 C.F.R. § 396.3(a))).[7] Importantly, Plaintiffs are not attempting to make Viewpoint and Gray liable simply because they own the trucks, which would be preempted by the Graves Amendment. Rather, the Amended Complaint, when read as a whole and taken as true, alleges that Viewpoint and Gray breached their duty of care regarding their maintenance of the equipment and their inaction on issues regarding the trucks that they leased to GWG Trucking.

Moreover, 49 U.S.C. § 30106(a) expressly states that "[a]n owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable . . . if . . . there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner)." In other words, an owner of a vehicle can be liable without offending the Graves Amendment if there is negligence or wrongdoing on the part of the owner. *See id.* Here, as stated, Plaintiff is claiming that the owners (i.e. Viewpoint and Gray) were negligent, a claim that the Graves Amendment expressly permits. *See* 49 U.S.C. § 30106(a). The Court emphasizes that pursuant to the Graves Amendment, the driver's (i.e. Loyle's) negligence does not mean that Viewpoint is automatically liable. But, consistent with the Graves Amendment, Plaintiff does allege sufficient facts that Defendants failed to maintain or properly service the trucks, allegations that plausibly support a claim for negligence. At this stage of the proceedings, the Court need not inquire further into whether Defendants were negligent. Rather, the Court concludes that Plaintiff

---

[7] Paragraph 75 states, in relevant part, that "responsible persons and/or entities that leased Viewpoint's vehicles had failed to 'systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles . . . subject to its control.'" (Am. Compl. ¶ 75 (quoting 49 C.F.R. § 396.3(a))) (ellipses in original). This type of allegation may be preempted by the Graves Amendment. The Court therefore will not consider it in its decision to deny Defendants' Motion to Dismiss. Plaintiff's overall claims are for negligence and gross negligence on behalf of Viewpoint and/or Gray, which are permissible under the Graves Amendment.

met her burden under *Iqbal* and *Twombly* to plead plausible claims, and application of the Graves Amendment does not warrant dismissal of Plaintiff's Amended Complaint.[8]

### 3. Whether Plaintiff Fails to State a Claim With Respect to Gray and His Liability Shield

Next, Defendants argue that the Court should dismiss the Amended Complaint because Plaintiff lacks standing to allege that Gray breached his duty of loyalty to his own company and that Gray should be dismissed because he is protected by a liability shield. (Moving Br. at 15, 17.) The Court will address each argument in turn.

#### a) Breach of Duty

First, in response to Defendants' argument that Plaintiff lacks standing to allege a breach of certain fiduciary duties, the Court notes that Plaintiff is not bringing a claim for a breach of a fiduciary duty as Defendant argues. (*See* Moving Br. at 18 ("Plaintiff fails to plead any fact . . . to challenge Mr. Gray's alleged violation of the duty of care or loyalty.")). Plaintiff alleges, as stated earlier in this Opinion, negligence and gross negligence based on an alleged breach of duty Defendants owed to the decedent, not a breach of duty that Defendants owed to their own shareholders or internal members. (*See e.g.*, Am. Compl. ¶ 21 ("Defendant Gary Gray permitted GWG to skirt [a]round the law and concurrently allowed Viewpoint to ignore—to the plaintiffs' detriment—whether its equipment, including a 2006 Sterling LT9500 dump truck, was properly maintained and roadworthy."); *Id.* ¶ 74 (Defendants "knew or should have known that GWG intentionally or negligently failed to exercise reasonable care and thereby increased the risk of harm to the motoring public, including [Dotson's] eventual injuries and death")). As such,

---

[8] Defendants also argue that the language in the lease agreement shows that the Graves Amendment preempts Plaintiff's claims. (*See* Moving Br. at 13–14.) The Court has reviewed the lease agreement. Nowhere in the lease agreement does it say that the lessee is responsible for maintaining the truck. A fair reading of the lease agreement demonstrates to the Court that the lessee will bear the burden of costs associated with fuel and oil to properly operate and maintain the equipment. That is, lessee must pay for fuel and oil appropriate for the equipment. The onus to maintain the trucks, according to the lease, remains with Defendants.

Defendants' argument that Plaintiff lacks standing to sue for Defendants' breach of certain fiduciary duties is without merit.

### b) Corporate Veil

Second, with respect to Plaintiff's attempt to hold Gray personally liable as owner of Viewpoint, GWG Trucking, and Gray's Truck Repair, LLC, the Court concludes that Gray's personal assets are protected because (1) Gray is protected by a liability shield for claims against him in his individual capacity, and (2) Plaintiff has failed to plead sufficient facts to pierce Gray's liability shield.

Under New Jersey law, courts "begin with the fundamental proposition[] that a corporation is a separate entity from its shareholders . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983). A court can "ignore a corporation's separate entity in order to prevent it 'from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'" *Rowen Petroleum Props., LLC v. Hollywood Tanning Sys., Inc.*, 899 F. Supp. 2d 303, 308 (D.N.J. 2012) (quoting *Melikian v. Corradetti*, 791 F.2d 274, 281 (3d Cir. 1986)).

To pierce the corporate veil, "a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Tr. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002); *see also Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (finding two elements are required for piercing the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and

the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice").

To satisfy the first element, "a plaintiff must allege that the parent 'completely dominate[s] the finances, policy, and business practice with respect to the subject transaction' to such a degree that the subsidiary has 'no separate mind, will, or existence of its own.'" *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 507 (D.N.J. 2009) (quoting *Craig*, 843 F.2d at 150). A plaintiff must also allege "such dominion or control was exercised to a substantial degree." *See Marketvision/Gateway Rsch., Inc. v. Priority Pay Payroll, LLC*, Civ. No. 10-1537, 2011 WL 1640459, at *4 (D.N.J. Apr. 29, 2011) (citing *Craig*, 843 F.2d at 150). The Third Circuit provided several non-binding factors relevant to the inquiry of whether the parent company completely dominates a subsidiary, including:

> gross undercapitalization . . . failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and . . . [whether] the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Holzli v. DeLuca Enters.*, Civ. No. 11-06148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012) (quoting *Craig*, 843 F.2d at 150).

To satisfy the second element, "a plaintiff need not prove common law fraud but [must] instead demonstrate that the defendants, via the corporate form, perpetrated a fraud, injustice, or the like, a less exacting standard." *Holzli*, 2012 WL 983693 at *2 (citing *Chen v. HD Dimension, Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *4 (D.N.J. Nov. 15, 2010)). "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal

14

bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. Super. Ct. App. Div. 1996).

Here, Plaintiff has not pled sufficient facts for the Court to hold Gray personally liable for Viewpoint's negligence. Admittedly, although Plaintiff properly does not seek to pierce the corporate veil as a distinct cause of action, by asserting claims for negligence and gross negligence against Gray in his individual capacity, she, in effect, seeks to pierce Gray's liability shield. *See Swift v. Pandey*, Civ. No. 13-650, 2013 WL 6054853, at *12 (D.N.J. Nov. 13, 2013) (dismissing with prejudice a claim for piercing the corporate veil because it is "not a distinct cause of action"). Plaintiff attempts to hold Gray personally liable for what he did in his capacity as a corporate officer and owner of GWG Trucking and Viewpoint. Plaintiff asserts that

> Mr. Gray owns, ran, and directed all three principal businesses that collectively caused catastrophic damages and Dotson's death: (1) the LLC truck repair shop that performed shoddy mechanics or none at all; (2) Viewpoint, the purported lessor or leasing company that failed to undertake responsibility for truck repairs, or to contractually bind any lessee to undertake such maintenance; and (3) [] GWG [Trucking], the professed lessee trucking company, [which] operate[s] an aged hazardous dump truck without a commitment to mechanically maintain the vehicle, which wiped out a modern trailer and the decedent in the prime of his life.

(Am. Compl. ¶ 114.) Moreover, Plaintiff alleges that all three companies were located and headquartered at the same address, thereby intermingling staff and business operations, (*id.* ¶ 117), and that Gray has "essentially run [the companies] as one unit." (*Id.* ¶ 118.) According to the Amended Complaint, "[s]taffers, purportedly working for one company have nevertheless served in senior positions at an associated Gray entity, including for example Tracey Williamson." (*Id.*)

These allegations, even taken as true, are not enough to plausibly plead a claim that Gray's liability shield should be pierced. Although Plaintiff pleads facts sufficient to support the first element of piercing the corporate veil, she has not pled facts sufficient to survive a motion to

dismiss on the second element. For example, the Amended Complaint can be liberally read to show that there may have been comingling of finances, policy, and business practice between the companies, but Plaintiff does not assert that there was a fraud or egregious wrong by Gray as a result of his actions sufficient to support piercing the corporate veil. The allegations in the Amended Complaint are for negligence—a straightforward tort that, absent extraordinary circumstances, does not result in piercing the veil. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil . . . is [a] rare exception, applied in the case of fraud or certain other exceptional circumstances."). Gray's liability shield "will not be abrogated" absent extraordinary circumstances, that do not exist here. *See Prochazka ex rel. Spencer v. Sunrise Senior Living, Inc.*, Civ. No. 12-4415, 2013 WL 1285271, at *2 (D.N.J. Mar. 26, 2013). In conclusion, because piercing the corporate veil is an extraordinary measure, the Court has explained that it will only be permitted where the elements have been adequately pled, which is not the case here. *See Wrist Worldwide Trading GMBH v. MV Auto Banner,* Civ. No. 10-2326, 2011 U.S. Dist LEXIS 127655, at *16 (D.N.J. Nov. 4, 2011) ("[P]arroting of the alter ego factors alone is insufficient to satisfy the required pleading standards.").

In her opposition, Plaintiff alternatively argues that Gray should be personally liable under the participation theory explained in *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268 (N.J. 2002). (Opp'n Br. at 12.) The participation theory states that a corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort. *Saltiel*, 788 A.2d at 272. New Jersey cases that have applied the participation theory to hold corporate officers personally responsible for their tortious conduct generally have involved intentional torts. *Id. Saltiel* sets forth the principal that the participation theory applies to tort claims, not breach of contract claims, and because *Saltiel* involved a breach

of contract, the New Jersey Supreme Court granted summary judgment in favor of the corporate officer. *Id.* at 270. Therefore, *Saltiel* was resolved on non-participation theory grounds. *Id.* Although the instant case involves tort law and not contract law, Plaintiff has not pled sufficient facts to show that the participation theory applies, especially given that Plaintiff's claims are for non-intentional torts.

Based on the foregoing, the Court concludes that Plaintiff has not pled sufficient facts against Gray to be able to hold him personally liable as owner of GWG Trucking and Viewpoint. Accordingly, all claims against Gray will be dismissed without prejudice.

4. <u>Whether Plaintiff Sufficiently Pleads Gross Negligence</u>

Lastly, Defendants argue that the Amended Complaint insufficiently pleads gross negligence against Viewpoint, GWG Trucking, and Gray.[9] (Moving Br. at 21.) The Court agrees. Under New Jersey law, the essential elements to state a claim for negligence and gross negligence are identical: (1) the existence of a duty owed by Defendants towards Plaintiff; (2) a breach of that duty by Defendants; (3) that Defendants' breach caused Plaintiff's injuries; and (4) that Plaintiff suffered damages as a result. *Sines v. Darling Ingredients Inc.*, Civ. No. 19-19121, 2020 WL 5015488, at *5 (D.N.J. Aug. 25, 2020). The difference between gross negligence and simple negligence is one of degree and not the quality of proof. *Mills v. Byck*, Civ. No. 19-14349, 2019 WL 3347169, at *6 (D.N.J. July 24, 2019). To that end, "[w]hereas negligence is the failure to exercise ordinary or reasonable care that leads to a natural and probable injury, gross negligence is the failure to exercise slight care or diligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016) (quotations omitted).

---

[9] Because claims against Gray's Truck Repair, LLC have been dismissed with prejudice and because Gray cannot be sued in his individual capacity, at this point, only gross negligence claims against Viewpoint remain. However, even assuming Gray's Truck Repair, LLC and Gray can be sued, the Court concludes that Plaintiff has also failed to plead sufficient facts to plausibly show gross negligence.

To properly allege gross negligence, a plaintiff must plead "something more than 'inattention' or 'mistaken judgment.'" *Moretz v. Trustees of Princeton*, Civ. No. 21-19822, 2023 WL 9017155, at *5 (D.N.J. Dec. 29, 2023) (holding that plaintiff sufficiently pled the higher standard of gross negligence where the complaint alleged the defendant university had actual knowledge of a teacher's prior sexual misconduct); *see also Doe ex rel. Doe v. Small*, 654 F. Supp. 3d 376, 396 (D.N.J. 2023) (stating gross negligence is "the failure to exercise slight care or diligence" (quoting *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 745 (2016))).

Here, after reading the allegations in the Complaint in full, the Court concludes that Plaintiff has not sufficiently pled allegations of gross negligence as to Viewpoint. The substantive allegations in the Amended Complaint relating to Viewpoint's gross negligence are the same as those related to simple negligence, and cannot survive Defendants' Motion to Dismiss. *See Doe v. Princeton Univ.*, Civ. No. 19-7853, 2020 WL 7383192, at *7 (D.N.J. Dec. 16, 2020) ("merely using phrases such as 'gross negligence,' does not mean the factual allegations support such a claim.").

More specifically, the Amended Complaints states that "Mr. Gray, Viewpoint, and [Gray's Truck Repair,] LLC failed to compel GWG's compliance with mandatory rules and governing regulations, including proper maintenance of leased trucks." (Am. Compl. ¶ 68). The Amended Complaint also provides that (1) "Gray made the conscious choice to hire or approve Loyle's hiring at GWG, thereby increasing the risk of harm to the general motoring public," (*id.* ¶ 69); (2) Defendants "tolerated GWG's operation of the vehicle without the required inspections and/or maintenance, including running on public roadways without steer tires and with front tires of different sizes," (*id.* ¶ 109); and (3) Defendants "neglected to exercise reasonable care and increased the risk of harm to [Dotson] by failing to ensure the company's leased vehicles were

serviced, and/or properly maintained," (*id.* ¶ 107). These allegations show simple negligence not gross negligence. *See Powell v. Seton Hall Univ.*, Civ. No. 21-13709, 2022 WL 1224959, at *5 (D.N.J. Apr. 26, 2022) (dismissing without prejudice a plaintiff's claims for gross negligence because the plaintiff's theory sounded in simple, not gross negligence); *see also Lindstrom v. St. Joseph's Sch. for the Blind, Inc.*, Civ. No. 15-8084, 2016 WL 5723658, at *10 (D.N.J. Sept. 30, 2016) (same, but holding that plaintiff's claim did sound more in gross negligence than negligence given that "a disabled man who, among other things, is blind and unable to speak—was being bitten by bed bugs" at a school, and the school did nothing to address the bed-bug problem). In contrast to *Lindstrom*, Plaintiff has not made any allegations that show Viewpoint, or the other Defendants, had actual knowledge of any regulatory violations or issues with their trucks.

In sum, considering the totality of the allegations and even giving Plaintiff the benefit of every favorable inference (as this Court must when resolving a Rule 12(b)(6) motion), the Court concludes that Plaintiff's allegations rise to no more than mere negligence. Accordingly, Plaintiff's gross negligence allegations (Count IV) will be dismissed without prejudice.

### C. MOTION TO STRIKE

With respect to their Motion to Strike, Defendants argue that if the Court does not dismiss the Amended Complaint, it should strike the allegations about Loyle's seatbelt use or non-use from the Amended Complaint. (Moving Br. at 22.) Those allegations provide that "Loyle confessed under oath during his deposition that he was not wearing a seatbelt when he careened into Lateef," (Am. Compl. ¶ 62), and "Loyle also admitted to never wearing a seatbelt when driving any GWG truck," (*id.* ¶ 63).

The Court disagrees with Defendants that these allegations should be stricken from the Complaint. At this time, striking these two paragraphs will not save time and expense, as is the

purpose of a motion to strike, *see Bristol-Myers Squibb Co.*, 77 F. Supp. 2d at 619, and the Court, in its sound discretion, believes that the paragraphs could be used and developed at a later point to help Plaintiff establish her negligence claims against Viewpoint. (*See* Am. Compl ¶¶ 17, 69). As such, the Court will deny Defendant's Motion to Strike.

## IV. CONCLUSION

For the reasons set forth above, the Court will **DISMISS** without prejudice all claims in the Complaint against Gray because he is protected by his liability shield. Count IV alleging gross negligence against Defendants will also be **DISMISSED** without prejudice given that Plaintiff has failed to sufficiently plead anything more than mere negligence. Plaintiff will be given leave to file an amended complaint.

Accordingly, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion to Dismiss. Defendants' Motion to Strike will be **DENIED**. An appropriate Order will follow.

Date: **November 25, 2024**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE