<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ESTATE OF LATEEF J. DOTSON**, through **DIANE C. DOUGLAS** (administrator)<br><br>Plaintiff,<br><br>v.<br><br>**VIEWPOINT LEASING INC.**, and **GARY GRAY** (individually),<br><br>Defendants. | Civil Action No. 24-255 (ZNQ) (TJB)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss in Part and Strike in Part the Second Amended Complaint filed by Defendants Viewpoint Leasing Inc. ("Viewpoint") and Gary Gray ("Gray", together with Viewpoint, "Defendants") on February 21, 2025. ("Motion", ECF No. 50). Defendants also filed a Brief in Support of their Motion. (Moving Br., ECF 50-2). Plaintiff opposed Defendants' Motion (the "Opposition"), (Opp'n. Br., ECF No. 51), to which Defendants replied (Reply Br., ECF 53). Plaintiffs then filed a request for permission to submit a sur-reply (ECF No. 54), which the Court granted on August 11, 2025. (ECF No. 64). The Court's August 11, 2025 Order permitted Defendants to file a response to the sur-reply, which Defendants did on August 15, 2025. (ECF. No. 65).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

For the reasons set forth below, the Court will **GRANT** Defendants' Motion to Dismiss in Part and Strike in Part.

I. <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

The Court assumes the parties' familiarity with the underlying facts and procedural history and only recites those facts necessary to decide the instant motion. For a comprehensive review of the factual and procedural history, reference is made to *Estate of Dotson through Douglas v. Viewpoint Leasing Inc.*, Civ. No. 24-255, 2024 WL 4880403 (D.N.J. Nov. 25, 2024).

According to the Second Amended Complaint (the "SAC"), this diversity action arises from the death of Decedent LaTeef J. Dotson ("Dotson") in May 2022. (SAC, ECF No. 45 ¶ 45). Dotson was a citizen of Delaware and Plaintiff Diane C. Douglas ("Plaintiff") is Dotson's mother who is also a citizen of Delaware. (*Id.* ¶¶ 3–4). Defendant Viewpoint is a citizen of New Jersey, with its corporate address listed as 56 Route 46, Delaware, NJ 07833. (*Id.* ¶ 5). Defendant Gray is also a citizen of New Jersey and is the owner of Viewpoint and non-party Gary W. Gray Trucking, Inc. ("GWG Trucking"). (*Id.* ¶¶ 6, 7, 9, 12, 23, and 32).

According to the SAC, GWG Trucking rented or leased a Sterling dump truck[1] from Viewpoint. (SAC ¶ 33). On May 2, 2022, Brandon R. Loyle ("Loyle" or "the Driver"), a commercial driver and employee of GWG Trucking was operating the Sterling dump truck when he failed to maintain control of the vehicle, crossed the double-yellow line of a two-way street, and hit Dotson head-on, killing him. (*Id.* ¶¶ 42–45).

Plaintiff filed a complaint against Gray and Viewpoint on January 16, 2024. (ECF No. 1). On March 29, 2024, Plaintiff filed an amended complaint, adding Gray's Truck Repair, LLC

---

[1] Defendants assert that the SAC inaccurately refers to the vehicle that Loyle was driving as a dump truck, and that the correct name of the vehicle is a "roll-off truck." (Moving Br. at 5 n.1). Given that the SAC refers to the vehicle as a "dump truck", the Court will use that term for the vehicle Loyle was operating.

("Gray's Truck Repair") as a defendant. (ECF No. 19). Defendants subsequently filed a motion to dismiss or strike the amended complaint (ECF No. 24), which the Court granted in part and denied in part on November 25, 2024 (ECF No. 41). The Court's November 25, 2024 Order dismissed with prejudice the claims against Gray's Truck Repair and dismissed without prejudice all claims against Gray and Count IV, alleging gross negligence, against Viewpoint. (*Id.*). Plaintiff was given leave to amend her Complaint, which she did on January 29, 2025. (ECF No. 45). Defendants filed a Motion to Dismiss in Part and Strike in Part the SAC (ECF No. 50), and this Motion is now fully briefed by Plaintiff and Defendants. (ECF Nos. 50, 51, 53–55, 57, 60, and 65). Defendants' Motion seeks to dismiss Count IV and all claims against Gray, and to strike from the SAC paragraphs 144, 156, 157, and 160 to 162. (Moving Br. at 8).

## II.  SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## III.  LEGAL STANDARD

### A.  MOTION TO DISMISS

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most

3

favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B.  MOTION TO STRIKE**

Federal Rule of Civil Procedure 12(f) provides, inter alia, that the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. *See* Fed. R. Civ. P. 12(f).  "The purpose of a motion to strike is to save time and expense through the excision of matter from the pleadings that will not affect the outcome of the case." *Ly Berditchev Corp. v. Truss Cosmetics Corp.*, Civ. No. 22-4242, 2023 WL 6307462, at *2 (D.N.J. Sep. 28, 2023) (quoting *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000)).  "Motions to strike are decided on the pleadings alone." *Deery v. Crystal Instr. Corp.*, Civ. No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (citations omitted).  Importantly, motions to strike are generally disfavored and granted sparingly, such as when a defense is clearly insufficient regardless of any disputed issues of fact.  *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217–18 (D.N.J. 1993).  "Even where the facts are not in dispute, Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law." *Id.* at 218

4

(citing, *inter alia, Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989)). The Court exercises wide discretion in considering a Rule 12(f) motion to strike. *See id.* at 217.

IV. **DISCUSSION**

    A. **CONFLICT OF LAW ANALYSIS**

Both parties agree that New Jersey substantive law should apply to Plaintiff's veil-piercing claims. (Moving Br. at 6; Opp'n. Br. at 5). The Court agrees. "[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because this action was brought in the District of New Jersey, New Jersey's choice of law rules apply. *See id.* at 500. New Jersey generally applies the more flexible government-interest approach to choice-of-law questions. *See id.* This analysis seeks "to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation." *Erny v. Estate of Merola*, 171 N.J. 86, 94 (N.J. 2002). Here, Viewpoint and GWG Trucking are incorporated in New Jersey and their principal places of business are in New Jersey. (SAC ¶¶ 5–7). Gray is also a New Jersey resident, and he incorporated both Viewpoint and GWG Trucking in New Jersey. (*See id.*) Moreover, the accident took place in New Jersey. (*See id.* ¶¶ 43–45). Insofar as the parties agree and New Jersey has a strong interest in whether Viewpoint's and GWG Trucking's corporate form can be disregarded to impose liability on Gray, the Court will apply New Jersey law to that analysis.

    B. **MOTION TO DISMISS**

        1. <u>Piercing the Corporate Viel</u>

In New Jersey, there is a "fundamental proposition[] that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State Cap. Title & Abstract Co. v. Pappas Bus.*

5

*Servs., LLC*, 646 F. Supp. 2d 668, 678–79 (D.N.J. 2009) (quoting *State Dep't of Env't Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (N.J. 1983)). Notwithstanding this general rule, courts may impose liability on a corporation's shareholders to "prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." *Ventron Corp.*, 94 N.J. at 500. "The party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Pappas Bus. Servs., LLC*, 646 F. Supp. at 679 (quoting *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 240 (App. Div. 1996)).

To pierce the corporate veil, "a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Tr. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002) (citations omitted); *see also Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (observing the two elements required for piercing the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice").

To satisfy the first element, "a plaintiff must allege that the parent 'completely dominate[s] the finances, policy, and business practice with respect to the subject transaction' to such a degree that the subsidiary has 'no separate mind, will, or existence of its own.'" *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 507 (D.N.J. 2009) (alteration in original) (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)). The Third Circuit has provided

6

several non-binding factors relevant to the inquiry of whether the parent company completely dominates a subsidiary, including:

> gross undercapitalization. . .failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and. . .[whether] the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Holzli v. DeLuca Enters.*, Civ. No. 11-06148, 2012 WL 983693, at *2 (D.N.J. Mar. 21, 2012) (alterations in original) (quoting *Craig*, 843 F.2d at 150).

To satisfy the second element, "a plaintiff need not prove common law fraud but [must] instead demonstrate that the defendants, via the corporate form, perpetrated a fraud, injustice, or the like, a less exacting standard." *Holzli*, 2012 WL 983693, at *2 (citing *Chen v. HD Dimension, Corp.*, Civ. No. 10-863, 2010 WL 4721514, at *4 (D.N.J. Nov. 15, 2010)).

As the Court has previously held, Plaintiff has pled sufficient facts to satisfy the first element for veil-piercing (ECF No. 40 at 15), so all that remains for the Court to decide is whether the SAC has pled facts sufficient to satisfy the second element. For the reasons set forth below, even accepting the well-pled allegations in the SAC as true, Plaintiff has still not met the second element.

Nowhere in the SAC does Plaintiff allege how Gray, through Viewpoint or GWG Trucking,[2] "perpetrated a fraud, injustice, or the like." *Holzli*, 2012 WL 983693 at *2 (citation omitted). Rather, the allegations in the SAC primarily focus on ways in which Viewpoint or GWG Trucking may have been negligent. For example, the SAC alleges Gray and Viewpoint failed to

---

[2] The SAC does not specify whether Plaintiff seeks to pierce the corporate veil of Viewpoint, GWG Trucking, or both entities. Out of an abundance of caution, the Court will presume that Plaintiff attempts to pierce the corporate veil of both corporations.

7

comply with New Jersey laws that require Viewpoint to maintain the equipment that it leases to other companies. (SAC ¶¶ 139–54). Accepting those allegations as true, they still would not prove that Gray used Viewpoint to perpetrate a fraud or promote injustice. At most, those allegations suggest that Viewpoint was negligent.

Plaintiff also argues Gray is committing fraud by either: (1) not complying with a subpoena issued in a prior case or (2) by making intentional misrepresentations to New Jersey regulators. (Opp'n. Br. at 7). According to Plaintiff, Defendants only produced a "blanket lease" in response to a subpoena served on Viewpoint before this case began. (SAC ¶¶ 158–159). The blanket lease agreement is attached to the SAC and is between Viewpoint and GWG Trucking and apparently sets forth the terms and conditions for leasing the equipment owned by Viewpoint, including the dump truck operated by Loyle. (SAC Ex. A). According to Plaintiff, this is evidence of Gray's "pernicious intentions" because on a Certificate of Public Convenience and Necessity ("CPCN") application to New Jersey regulators in March 2017, GWG Trucking attached a lease different than the one produced by Viewpoint in response to the subpoena. (Opp'n. Br. at 7; *see also* SAC Ex. C).

As an initial matter, the subpoena was directed to Viewpoint, not Gray (SAC Ex. B), and there are no allegations in the SAC asserting that Gray was personally involved in responding to the subpoena. Moreover, the CPCN application was not even signed by Gray, so it is unclear what, if any, role he had in preparing in the CPCN application. (SAC Ex. C). In any event, the alleged discrepancies are not enough to plead a claim to pierce the corporate veil. To the extent Plaintiff beliefs that Viewpoint did not disclose all responsive documents, Plaintiff could have sought to enforce the subpoena or pursued documents in discovery in this case. Plaintiff has not provided,

and the Court has not found, any cases to suggest that non-compliance with a subpoena is enough to pierce the corporate veil.

Plaintiff also asserts that Viewpoint is undercapitalized, which is further proof of the fraudulent nature of Viewpoint. (Opp'n. Br. at 7–8). According to Plaintiff, the blanket lease shows that GWG Trucking does not pay for the leases, and "[t]he absence of income from leasing scores of commercial trucks reeks of mischief, dodgy bookkeeping, and it confirms undercapitalization on its face." (Opp'n. Br. at 8).

As set forth above, undercapitalization is relevant in this context. However, in this context "courts generally look to initial capitalization, asking whether a company was adequately capitalized at the time of its organization." *Tr. of Nat. Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003) (quoting *Matter of Multiponics, Inc.*, 622 F.2d 709, 717 (5th Cir. 1980)). "[T]he inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose[s] such as avoiding the risks known to be attendant to a type of business." *Id*.

Here, the absence of any specified payments on the blanket lease is insufficient to show that Viewpoint is undercapitalized. Even assuming Viewpoint does not receive any payments for leasing its equipment to GWG Trucking, the SAC does not contain any allegations that Viewpoint did not have sufficient capital at the time of its formation over 41 years ago. *See Fagan v. Fischer*, Civ. No. 14-7013, 2019 WL 5587286, at *24 (D.N.J. Oct. 30, 2019) (dismissing claim to pierce the corporate veil where the plaintiff failed to allege facts that corporation was undercapitalized at inception).

Plaintiff's remaining argument, that "Viewpoint is merely a facade for the operations of Gary W. Gray Trucking" is similarly unavailing. (Opp'n. Br. at 8). As an initial matter, Plaintiff appears to support that argument by relying on allegations in the SAC that Gray is the common owner of both Viewpoint and GWG Trucking. (*Id.*). But common ownership between the two companies does not establish that Viewpoint or GWG Trucking are being used to avoid liability or perpetrate a fraud. *See Foodtown Inc.*, 296 F.3d at 172–73 (finding that allegations of common ownership could be used to satisfy the first element, but that more must be alleged in order to show that a parent company used a subsidiary to perpetrate fraud, to accomplish injustice, or to circumvent the law).

Plaintiff also relies on the New Jersey Supreme Court's ruling in *Ventron* for the proposition that veil piercing is appropriate when "parent corporations are accountable when they dominate and control their subsidiaries to the extent that the subsidiary has no separate existence." (Opp'n. Br. at 8). However, Plaintiff misstates that case's holding. The *Ventron* court did not, as Plaintiff claims, pierce the corporate veil of a subsidiary because of the "level of control and involvement" of the parent corporation in the subsidiary's affairs. (*Id.*). Rather, the *Ventron* court specifically rejected that argument, and instead held that the parent company's alleged day-to-day involvement in the subsidiary's affairs, without more, was insufficient to pierce the corporate veil under the common-law.[3] *Ventron Corp.*, 94 N.J. 473 at 501.

2. <u>Participation Theory</u>

Defendants next argue "that Plaintiff failed to allege facts sufficient to hold Gray liable under a participation theory." (Moving Br. at 22). Plaintiff does not address this argument in the Opposition, which Defendants assert constitutes a "waiver of those claims." (Reply 4). Indeed,

---

[3] Plaintiff's confusion may stem from the *Ventron* court's holding that the subsidiary's corporate veil could be pierced under the Spill Act, a statute not at issue here. *Ventron Corp.*, 94 N.J. 473 at 501–02.

10

"[a] claim is deemed abandoned where the plaintiff fails to offer any opposition to dismissal of that claim." *Booker v. Central Loan Administration & Reporting*, Civ. No. 24-670, 2024 WL 4826053, at *4 (D.N.J. Nov. 19, 2024). Given that Plaintiff did not address Defendants' arguments, the Court finds that she has abandoned a position premised on the participation-theory.[4]

### 3. Dismissal With Prejudice

The only question that remains is whether Plaintiff's claims against Gray should be dismissed with or without prejudice. Here, Plaintiff has had the opportunity to amend her complaint twice. She has also had the opportunity to re-plead facts sufficient to hold Gray personally liable. Plaintiff has not done so, and the Court believes that any further amendment would be futile at this time. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, Plaintiff's claims against Gray in his individual capacity and Count IV are dismissed without prejudice and without leave to further amend at this time.

### C. MOTION TO STRIKE

Defendants separately move to strike paragraphs 144, 156, 157, and 160 to 162 of the SAC. (Moving Br. at 8). Federal Rule of Civil Procedure 12(f) allows courts to strike from a pleading any "insufficient defense or any immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored by the courts. *See Kaetz v. United States*, Civ. No. 22-1003, 2023 WL 2818115, at *2 (D.N.J. Mar. 27, 2023). Indeed, a motion to strike will only be granted if the movant shows "that the allegations being challenged are so unrelated to Plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings

---

[4] Even assuming Plaintiff did not abandon this argument, she has still not pled facts sufficient to hold Gray personally liable under the participation theory. As the Court has previously held, New Jersey cases that have applied this theory have generally involved intentional torts. *See Estate of Dotson through Douglas*, 2024 WL 4880403, at *8. Here, the SAC does not allege any intentional torts, nor has Plaintiff pled sufficient facts to show that the participation theory applies. Accordingly, the SAC fails to plead facts sufficient to hold Gray personally liable.

will be prejudicial." *Lewakowski v. Aquestive Therapeutics, Inc.*, Civ. No. 21-3751, 2023 WL 2496504, at *13 (D.N.J. Mar. 14, 2023) (citation omitted). "Mere redundancy, immateriality, impertinence or scandalousness is not sufficient to justify striking an allegation—the allegation must also be shown to be prejudicial to the moving party." *Id*. (citation omitted).

Here, Defendants argue that portions of the SAC should be stricken because Plaintiff falsely accuses both Defendants and defense counsel of intentionally misleading the Court, and that these allegations have no relationship to the underlying negligence claims. (Moving Br. at 23–25). Plaintiff responds that striking these allegations would "not save time and expense. . .and that the paragraphs could be used and developed at a later point to help Plaintiff establish her. . .claims against [the defendants.]." (Opp'n. Br. at 11).

Even considering Defendants high burden on a motion to strike, the Court agrees that these allegations should be stricken from the SAC. Plaintiff's allegations that Gray, Viewpoint, and GWG Trucking "engaged in shady filings" (SAC ¶ 144), have been "dishonest" and "betrayed their obligation to be truthful" to the Court (SAC ¶¶ 156–57), and have failed to comply with a subpoena (SAC ¶¶ 160–62), are irrelevant to the remaining claims in the SAC. While those allegations may be relevant for purposes of a motion to compel or a motion for sanctions, they are entirely unrelated to her underlying causes of action. Moreover, Plaintiff's allegations that Defendants, and by extension their counsel, have misled the Court and intentionally withheld information is a serious accusation, which only serves to confuse the issues in this case. *See Golden State Med. Supply Inc. v. AustarPharma LLC*, Civ. No. 21-17137, 2022 WL 2358423, at *12 (D.N.J. June 30, 2022) (granting motion to strike paragraphs of a complaint containing details of a separate lawsuit that had no relevance to plaintiff's claims and would likely confuse the issues in the case). Plaintiff also does not provide any valid reason for why these allegations should not

12

be stricken, as additional discovery into whether Defendants complied with a subpoena are not relevant to the merits of her claims. *See Mylan Pharm. Inc. v. Teva Pharm. Indus. Ltd.*, Civ. No. 21-13087, 2025 WL 756793, at * 45 (D.N.J. Feb. 27, 2025) (finding that motion to strike allegations in a complaint was appropriate when they were "not proportional to the needs of [the] case" and "would lead to information of dubious relevance" to the present claims). Accordingly, the Defendants' Motion to Strike will also be granted.

## V.    CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' Motion to Dismiss in Part and Motion to Strike in Part. The claims against Gary Gray (including Claim IV) will be dismissed without prejudice and without leave to further amend at this time. Paragraphs 144, 156, 157, and 160 to 162 will be stricken. Plaintiff will be ordered to file a Third Amended Complaint that complies with this Opinion within 14 days. An appropriate Order will follow.

Date: September 25, 2025

                                                    s/ Zahid N. Quraishi
                                                  **ZAHID N. QURAISHI**
                                                  **UNITED STATES DISTRICT JUDGE**